UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. HADDAD,

      Petitioner,    Civil Case No.: 07-12540
               Crim. Case No.: 97-80150

vs.              HONORABLE DAVID M. LAWSON
               HONORABLE STEVEN D. PEPE

UNITED STATES OF AMERICA,

      Respondent.
=============================/

## REPORT AND RECOMMENDATION

  On July 9, 1997, Petitioner Michael Haddad pleaded guilty to the misdemeanor crime of possession of a controlled substance, in violation of 21 U.S.C. § 844. He was fined $1,000.00 and a $25.00 assessment. This conviction stemmed from Petitioner's possession of three hits of LSD on December 28, 1996, while crossing from the United States into Canada. (Dkt. #1, Ex. 8). Just eight days earlier, on December 20,1996, Petitioner was convicted in state court for "financial transaction device/retain without consent." *Haddad v. Gonzales*, 06-3210 (6th Cir. 2007) (Dkt. #1. Ex. 4).

  Based on these convictions, the Department of Homeland Security ("DHS") initiated removal proceedings against Petitioner in June 2004. DHS sought removal because (1) Petitioner had been convicted of a crime involving moral turpitude committed within five years after admission for which a sentence of one year or longer may be imposed (as to the financial transaction device offense), and (2) Petitioner was an alien who had been convicted of a

1

controlled substance offense (the LSD conviction that is the subject of this Petition). *See Haddad*, at 2. An immigration judge ordered him removed from the United States after Petitioner failed to pursue cancellation of removal. *See Id.* Petitioner then sought to reopen the removal proceedings, but that request was denied by the Immigration Judge, a decision affirmed by both the Board of Immigration Appeals ("BIA") and Sixth Circuit (Dkt. #1, Ex. 4, 5; *See also Haddad*, at 2).

Petitioner filed the present Petition for Writ of Error Coram Nobis on June 13, 2007, just under 10 years after the challenged conviction (Dkt. #1). He seeks to vacate his LSD conviction based on alleged constitutional violations in the district court's plea colloquy, his attorney's performance, and the court's loss of his decade-old plea hearing transcript (Dkt. #1, p. 1).[1] The only factual support for the Petition is an affidavit by Petitioner (Dkt. #1, Ex. 1). All pre-trial matters were referred under 28 U.S.C. § 636 (b)(1)(A) and (B) (Dkt. #3). For the reasons indicated below, it is **RECOMMENDED** that Petitioner's Petition for Writ of Error Coram Nobis be **DENIED**.

**I.  ANALYSIS**

  **A.  <u>Legal Standards</u>**

The All Writs Act, 28 U.S.C. § 1651(a), empowers a federal court to issue a writ of error coram nobis. *See United States v. Morgan*, 346 U.S. 502, 506 (1954).[2] *Coram nobis* is an

---

[1] Citations to Petitioner's Brief will note page numbers as he assigns them at the bottom of the page, rather than the page numbers assigned by the e-filing system.

[2] Although there is some question as to the continued viability of the writ of error coram nobis, *see United States v. Beggerly*, 524 U.S. 38, 45 (1998), it appears that it has been abolished only in civil actions. It survives in criminal actions where, as here, habeas relief is not available because the petitioner is not in custody pursuant to the challenged conviction. *See*

"extraordinary writ, used only to review errors of the most fundamental character – e. g, errors rendering the proceedings themselves invalid." *United States v. Johnson*, 237 F.3d 751, 755 (6th Cir. 2001). Available only to those defendants who have completed their sentence, this writ's application is limited to those "circumstances compelling such action to achieve justice." *Morgan*, 346 U.S. at 511. To prevail, the petitioner must show "(1) an error of fact; (2) unknown at the time of trial; (3) of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known." *Johnson*, 237 F.3d at 755. "It is presumed the proceedings were correct and the burden rests on the accused to show otherwise." *Morgan*, 346 U.S. at 512. Thus, the coram nobis petitioner carries a heavy burden. As the Supreme Court noted, "it is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate." *Carlisle v. United States*, 517 U.S. 416, 429 (1996).

Unlike habeas corpus relief, there is no statute of limitations within which to bring a coram nobis petition. The Supreme Court noted, though, that there must be "sound reasons [] for failure to seek appropriate earlier relief." *Morgan*, 346 U.S. at 512. Accordingly, the Sixth Circuit has held that the doctrine of laches should apply in coram nobis proceedings "because otherwise there would be essentially no time limits for bringing coram nobis claims. Moreover, sound policy dictates that coram nobis claims be brought as early as possible to prevent the suffering imposed by illegal convictions and to prevent the government from being prejudiced in its efforts to reprosecute meritorious cases." *Blanton v. United States*, 94 F.3d 227, 231 (6th Cir.

---

*Carlisle v. United States*, 517 U.S. 416, 429 (1996); *United States v. Johnson,* 237 F.3d 751, 754 (6th Cir. 2001).

1996); *see also Johnson v. United States*, 334 F.2d 880, 883-84 (6th Cir. 1964) (refusing to consider coram nobis petition because of fifteen-year delay, noting lack of transcript and likely unavailability of witnesses).[3]

B. **Factual Analysis**

Petitioner waited 10 years to bring this Petition. To explain the delay, Petitioner contends that he was "not aware of his legal disability or the collateral consequences of this conviction until notified by Immigration in 2004 that he would be subject to deportation" (Dkt. #1, p. 7, n.7). Thereafter, his attorneys sought to fight his immigration case first, before filing this Petition (Dkt. #1, p. 7, n.7). Petitioner, thus, attempts to limit the amount of delay to three years – from the time he learned of the removal proceedings until the time he filed the Petition. But the majority of the claims asserted in the Petition have nothing to do with the immigration consequences of his guilty plea; rather, the claimed defects were in the advice of counsel as to the proceedings on July 9, 1997, and to the court's colloquy on that day. For these claims, the period of delay is 10 years.

1. **Claims Related to the Magistrate Judge's Plea Colloquy**

All of Petitioner's complaints regarding the magistrate judge's plea colloquy under Rule 11 were known to him, and fully available to raise on July 9, 1997. Petitioner claims that he has

---

[3] Other circuits also apply the doctrine of laches, or require some justification for not bringing the petition earlier. *See Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994) (noting that a coram nobis petition "is subject to the equitable doctrine of laches . . . [which] bars a claim if unreasonable delay causes prejudice to the defendant"); *United States v. Correa-DeJesus*, 708 F.2d 1283, 1286 (7th Cir. 1983) (applying the doctrine of laches to a coram nobis proceeding); *Maghe v. United States*, 710 F.2d 503, 503-04 (9th Cir. 1983).

"no recollection of ever being questioned by the court regarding the voluntariness of the plea, the constitutional rights [he] would be waiving, the nature of the crime charged, the actual consequences of the guilty plea, or any questions relating to the factual basis for the offense." (Dkt. #1, Ex. 1, ¶18). Yet, claiming to have no recollection of a court's colloquy is different than affirmatively stating that the magistrate judge failed to provide these warnings.[4] Especially in light of the presumption attached to the correctness of the proceedings, *see Morgan*, 346 U.S. at 512, Petitioners allegations of error are insufficient.

Moreover, Petitioner does not, and indeed cannot, argue that Rule 11 requires the judge to advise a defendant of possible immigration consequences to a guilty plea. *See El-Nobani v. United States*, 287 F.3d 417 (6th Cir. 1999) (noting that "deportation is not within the control and responsibility of the district court, and hence, deportation is collateral to a conviction"); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994) (holding that a "defendant need only be aware of the direct consequences of the plea, however; the trial court is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea."). *See also Santos v. Kolb*, 880 F.2d 941, 944 (7th Cir. 1989) (finding immigration consequences collateral to guilty plea); *United States v. Romero-Vilca*, 850 F.2d 177, 179 (3d Cir. 1988) ("We hold that potential deportation is a collateral consequence of a guilty plea."); *United States v. Quin*, 836 F.2d 654, 655 (1st Cir. 1987) ("Deportation in this context is generally regarded as a

---

[4] Petitioner states further that he "*believes* he did not retain counsel but *believes* he must have spoken to a court appointed lawyer because he recalls being advised to *basically* just plead guilty and pay a fine" (*emphasis added*)(Dkt. #1, p. 5). The fact that Petitioner cannot even confirm with confidence whether he paid to retain counsel casts serious doubts on his recollection of all the events surrounding his plea.

collateral consequence."); *United States v. Campbell*, 778 F.2d 764, 767 (11th Cir. 1985) (holding that the failure to advise defendant of potentiality of deportation as a result of the guilty plea did not constitute a violation of Rule 11 by the trial court or deficient performance by defense counsel and that, therefore, lack of such advice prior to the entry of the guilty plea was not the basis for withdrawing that plea); *United States v. Russell*, 686 F.2d 35, 39 (D.C. Cir. 1982) ("It has become well settled, however, that Rule 11 does not require informing a defendant of the possibility of deportation.").

Even putting the insufficiency of Petitioner's allegations aside, his claim should be barred
as untimely under the laches doctrine. The alleged deficiencies in the plea colloquy are procedurally distinct from the processes DHS has undertaken to remove Petitioner from the United States, and as stated before would be fully known to him and developed as of July 9, 1997. The ten year delay in filing the Petition raises the defense of laches. *See, e.g., United States v. Dyer*, 136 F.3d 417, 429 (5th Cir. 1998) (nine-year delay is unreasonable); *Telink v. United States*, 24 F.3d 42, 48 (9th Cir. 1994) (nearly five years is unreasonable); *Johnson v. United States*, 334 F.2d 880, 883-84 (6th Cir. 1964) (fifteen years is unreasonable); *Kiger v. United States*, 315 F.2d 778, 779 (7th Cir. 1963) (denying relief where petitioner waited four years to challenge conviction); *see also United States v. Nyhuis*, 40 Fed. Appx. 80, 81 (6th Cir. 2002) ("A ten-year delay does not constitute an exercise of reasonable diligence."); *Craven v. United States*, 26 Fed. Appx. 417, 419 (6th Cir. 2001) (seven-year delay unreasonable).

The delay here limited possible options available to the government.[5] There is no transcript of Petitioner's guilty plea hearing, and thus no way of determining if the self-serving allegations in Petitioner's affidavit are true. Had he brought a timely motion under section 2255, a transcription of the hearing might then have been possible, or at least witnesses relevant to the plea hearing could have been available. Similarly, prosecuting the case now if the plea were withdrawn would be more difficult.[6] Indeed, in finding the fifteen-year delay too long in *Johnson*, the Sixth Circuit noted that "witnesses may have died or moved to parts unknown. The transcript of evidence offered at the criminal trial probably cannot be prepared." *Johnson*, 334 F.2d at 883. The *Johnson* court also found it significant that the petitioner there, just like

---

[5] Petitioner claims that the unavailability of a transcript of his guilty plea entitles him to coram nobis relief, or a new trial (Dkt. #1, pp. 16-17). This claim is without merit, as there has been no apparent due process violation here.

As Petitioner correctly notes, the Sixth Circuit requires a showing of prejudice for habeas relief based on missing transcripts. *See Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986). Prejudice cannot be established by speculation alone, nor by the harsh consequences from the pending conviction. When an alien seeks to have a conviction cleared for the purpose of avoiding harsh immigration consequences, the Sixth Circuit has found that the conviction remains effective for immigration purposes. *Pickering v. Gonzales*, 465 F.3d 263 (6th Cir. 2006). Moreover, Petitioner only speculates as to the content of the plea colloquy, noting in his Affidavit that "I have no recollection of ever being questioned by the court regarding the voluntariness of the plea, the constitutional rights I would be waiving, the nature of the crime charged, the actual consequences of the guilty plea, or any questions relating to the factual basis for the offense" (Dkt. #1, Ex. 1, ¶18). A "petitioner must present something more than gross speculation that the transcripts were requisite to a fair appeal," or in this case, a fair Petition. *Bransford*, 806 F.2d at 86.

[6] While no substitute for a full trial on the charges, this Court cannot ignore the historical fact that the federal government - that seeks to focus on the more significant drug cases - generally prosecutes misdemeanors or drug cases only when a defendant is virtually caught in the act be federal agents like border officials finding drugs on the accused. Once the contraband is tested and verified to be illegal drugs, the defenses of identity, knowledge, constructive vs. actual possession are rarely available, which leads to the high rate guilty pleas in such cases. Petitioner is not making a claim of actual innocence in this case that might enhance the concerns of justice.

7

Petitioner here, had been in court before. *See id.* at 883-84 ("Appellant was not an inexperienced infant wholly unfamiliar with the law as the brief pro per filed in this case eloquently attests. He previously had many encounters with the law. We do not believe it took him 15 years to discover the point which he is now raising."). While Petitioner may not have had an extensive criminal record, he had just pleaded guilty and been sentenced the previous year in state court (Dkt. #1, p. 4). Few guests to a country to which admission is highly coveted could be oblivious to the obvious risks that repeated criminal conduct might jeopardize one's tentative status in that country.

In sum, Petitioner's unjustified ten-year wait in challenging the magistrate judge's Rule 11 colloquy triggers the bar of laches, and *Blanton*'s mandate that "coram nobis petitions be brought as early as possible." *Blanton*, 94 F.3d at 231; *see also United States v. Riedl*, __ F.3d __, 2007 U.S. App. LEXIS 18617, No. 06-10424 (9th Cir. Aug. 6, 2007) (in rejecting the six year delay in bringing an action, the court noted "To follow Riedl's suggestion under the circumstances of this case would transform the extraordinary writ of coram nobis into a free pass for attacking criminal judgments long after they have become final.").

### 2. **Ineffective Assistance of Counsel Claims**

Similarly, most of Petitioner's ineffective assistance of counsel claims are independent of the immigration proceedings initiated in June 2004. Only Petitioner's allegation that the attorney failed to advise him of the possible immigration consequences accompanying a guilty plea was affected by the initiation of removal proceedings. All of the other ineffective assistance

8

allegations – Petitioner's counsel's allegedly faulty advice regarding trial, suppression of evidence, the government's standard of proof, and failure to object to the magistrate judge's purportedly deficient plea colloquy – have nothing to do with the June 2004 onset of his immigration case (Dkt. #1, pp. 10-11).[7] For these issues, like the plea colloquy issue above, nothing that took place after July 9, 1997 – and certainly not the subsequent initiation of immigration proceedings–affected the development of these alleged defects in performance by his attorney.

Petitioner must show "sound reasons" for waiting a decade to bring these constitutional violations to the court's attention. *See Morgan*, 346 U.S. at 512. Yet, he offers no reason for the delay apart from the immigration consequences, except to say that he was "not aware of his legal disability" (Dkt. #1, p. 7, n.7). And while it was the deportation proceedings that made Petitioner aware of the alleged deficiencies in his prior hearing, he expects the Court to believe that the "focus" of his ineffective counsel claim is on the failure of his attorney to advise him of the pre-judgment probation program under 18 U.S.C. § 3607 (Dkt. #7, p. 3).

In reviewing the record provided by Petitioner, it is difficult to accept his contention that his motive in bringing this Petition is to address the alleged failure by Petitioner's counsel to advise him of the probation program. If Petitioner's defense counsel bungled in 1997 an opportunity to get the LSD possession charges dismissed that alleged failing was available in

---

[7] Petitioner mentions the "arguably illegal search and seizure" related to this offense. (Dkt. #1, p. 10). Obviously, as a search conducted at the border, the officer was permitted to search Petitioner and his vehicle without probable cause or even reasonable articulable suspicion.
*See generally United States v. Flores-Montano*, 541 U.S. 149 (2004) (search of vehicle, including disassembly of gas tank, at border did not require probable cause or reasonable articulable suspicion).

1997 and not made more obvious by a June 2004 DHS removal proceeding. Here, Petitioner waited 10 years to bring this Petition triggered not by new evidence concerning the 1997 plea, but rather to try and undermine the holding of the Immigration Judge and BIA regarding deportation. To explain the delay, Petitioner contends that he was "not aware of his legal disability or the collateral consequences of this conviction until notified by Immigration in 2004 that he would be subject to deportation" (Dkt. #1, p. 7, n.7). Yet again, new knowledge of collateral consequences is not sufficient for coram nobis. In addition, although Plaintiff became aware in June 2004 of alleged errors that occurred during proceedings held in 1997, he failed to file an immediate petition to challenge those errors. Instead, his attorneys sought to fight his immigration case first by proceeding through the Immigration Court and then by appealing to the Sixth Circuit, before filing the present Petition three years after he admits he was aware of both the asserted errors in his 1997 plea and its collateral consequences. *Id.*

The Ninth Circuit examined a similar situation in *Maghe v. United States*, 710 F.2d 503, 503-04 (9th Cir. 1983). There, Maghe pleaded guilty in 1956 to transporting a stolen motor vehicle in interstate commerce. As a result of the 1956 conviction, he received an undesirable discharge from the Army. In 1981, the Army denied Maghe's request to upgrade his discharge. The petitioner then challenged the validity of his twenty-five year old conviction – at which he alleged he was not provided counsel – because "[a]s a result of the 1956 conviction, he received an undesirable discharge from the Army." *Id.* Maghe filed the petition believing that "if he is successful in this action, the Army will upgrade his discharge and he will be eligible for various benefits." *Id.* In rejecting it as untimely, the Ninth Circuit noted that Maghe's "allegation that he had no reason to challenge the conviction until 1981 when his request to upgrade his discharge

was denied explains only his motive for now seeking relief.  It does not explain the reason that he waited 25 years before seeking to upgrade a discharge that he allegedly knew should be upgraded.  He has alleged no 'sound reasons' for his failure to challenge the 1956 conviction earlier." *Id.*

Petitioner may not have had a motive to bring a challenge earlier, but that cannot serve as "sound reason" for his lengthy delay in bringing this Petition.  *See also Nicks v. United States*, 955 F.2d 161, 167 (2d Cir. 1992) ("The fact that [the petitioner] may have had no reason to challenge the [prior] conviction until after the sentence was imposed in [a subsequent case] is not, standing alone, a sound reason.").  In short, Petitioner fails to provide sufficient justification for not raising his claims relating to the sufficiency of the magistrate judge's plea colloquy or his ineffective assistance of counsel claims.  Given the ten years that have elapsed, and the prejudice to the government, these claims should be barred as untimely.  Petitioner has not alleged any error of fact or assertion of actual innocence which might demonstrate a fundamental injustice.  Rather, he merely raises legal challenges concerning the propriety of his plea.  Petitioner was aware of the facts underlying his arguments at or shortly after the time of sentencing, and therefore, the arguments are insufficient to entitle him to coram nobis relief.  *See Blanton*, 94 F.3d at 230.

        3.        **Withdrawal of Petitioner's Guilty Plea**

In addition to the insufficiency of Petitioner's writ of coram nobis, he also fails to meet the standards governing the withdrawal of a guilty plea.  A guilty plea is valid if it is entered knowingly, voluntarily, and intelligently by the defendant.  *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) ("Waivers of constitutional rights not only must be

voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). A district court, in accordance with Rule 11 of the Federal Rules of Criminal Procedure, must verify that "the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States v. Webb*, 403 F.3d 373, 378-79 (6th Cir.2005) (citing *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir.1988)).

Here, Petitioner seeks to have his guilty plea struck and conviction and sentence vacated because he claims he did not knowingly and voluntarily enter his plea as a result of a failure to receive effective counsel or to obtain information from the Court regarding the nature and consequences of the plea (Dkt. #1, pp. 8-9). Factors in whether defendant can show fair and just reason for withdrawal of his guilty plea are: (1) amount of time that elapsed between plea and motion to withdraw it; (2) presence, or absence, of valid reason for failure to move for withdrawal earlier in proceedings; (3) whether defendant has asserted or maintained his innocence; (4) circumstances underlying entry of guilty plea; (5) defendant's nature and background; (6) degree to which defendant has had prior experience with criminal justice system; and (7) potential prejudice to government if motion to withdraw is granted. See, Fed. R. Crim. Pro. R. 11(d)(2)(B); *United States v. Pluta*, 144 F.3d 968, 973 (6th Cir.1998)(quoting *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir.1994)).

In *United States v. Dixon*, 479 F.3d 431 (6th Cir. 2007), the Sixth Circuit held the federal district court did not abuse its discretion by denying narcotics trafficking defendant's motion to withdraw guilty plea, which alleged that defense attorney had misrepresented possible sentence

12

if convicted; although defendant had hearing difficulties and history of heart ailments. The Sixth Circuit noted that the motion came nearly two years after plea, defendant offered no persuasive explanation for delay, defendant had not consistently and vigorously maintained his innocence, the sentencing court found no basis for allegations of attorney misstatements, and defendant had prior state conviction.

The facts presented here are similar to those in *Dixon*, and weigh heavily against allowing Petitioner to withdraw his guilty plea. As noted above, Petitioner has brought his motion ten years after entering his plea. Even if the Court accepts that Petitioner did not become aware of the alleged errors surrounding his plea until June 2004, Petitioner still waited three years to file the present Petition, and has offered no persuasive explanation for that three year delay. "The shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time." *United States v. Baez*, 87 F.3d 805, 808 (6th Cir.1996) (quoting *United States v. Triplett,* 828 F.2d 1195, 1197 (6th Cir.1987). The Sixth Circuit has frequently upheld denials of plea withdrawals in cases involving much shorter delays. *See, e.g., United States v. Durham*, 178 F.3d 796, 799 (6th Cir.1999) (77 day delay); *Baez*, 87 F.3d at 808 (67 day delay); *Goldberg*, 862 F.2d at 104 (55 day delay); *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir.1987) (thirty-five-day delay). In the present case, the considerable time that elapsed between Petitioner's plea and his motion to withdraw his plea strongly supports a decision to deny his motion.

The third factor also does not weigh in Petitioner's favor. Petitioner has not consistently and vigorously maintained his innocence, but rather simply contends that his counsel should

13

have advised him regarding probation programs and immigration consequences, but failed to do so. This position is a far cry from the "vigorous and repeated protestations of innocence" that would support a motion to withdraw a guilty plea. *Baez*, 87 F.3d at 809.

The fifth, sixth, and seventh factors all weigh against granting this petition. Unlike the defendant in *Dixon*, Petitioner has not alleged any hearing problems or other disabilities effecting his ability to understand legal proceedings. Indeed, Petitioner describes himself as a "successful businessperson, having opened (and continuing to own and manage) the Dollar Mart at the intersection of Woodward Avenue and Six Mile Road in Detroit" (Dkt. #1, p. 2). On December 20, 1996, Petitioner was convicted in state court for "financial transaction device/retain without consent." *Haddad v. Gonzales*, 06-3210 (6th Cir. 2007) (Dkt. #1. Ex. 4), and therefore has a prior state conviction indicating, at least some degree, prior experience with the criminal justice system. In addition, the ten year delay in bringing this Petition involves prejudice to the government's ability to reinstate a case against Petitioner.

Without a transcript, it is difficult to evaluate the fourth factor (circumstances underlying entry of guilty plea). As set forth in *Strickland*, 466 U.S. at 687, to establish ineffective assistance of counsel, a defendant must prove that counsel's performance fell below an objective standard of reasonableness as judged by "prevailing professional norms," and that a reasonable probability exists that, but for counsel's unprofessional errors, the results of the proceeding would have been different. *Id.* at 687-688, 694. "If a reviewing court can determine lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient." *United States v. Boyd*, 259 F. Supp. 2d 699, 705 (W.D. Tenn. 2003) (citing *Strickland*, 466 U.S. at 697). In a case involving a guilty plea, the defendant must show (a) counsel failed to provide "the

standard of attorney competence already set forth in *Tollett v. Hendersen* and *McMann v. Richardson*," *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); and (b) but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial, *id.* at 59.

In the present case, the evidence is hardly conclusive to demonstrate that counsel was ineffective during his 1997 plea hearing. In light of the missing transcript from Petitioner's 1997 hearing, Petitioner argues that the Court must accept as true his allegations and statements. Federal court review presumes that an attorney is competent and the burden rests upon the defendant to show a constitutional violation. *United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995). Moreover, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *O'Hara v. Wigginton*, 24 F.3d 823, 827 (6th Cir. 1994).

In the present case, it cannot be said that Petitioner has sufficiently demonstrated that his prior attorney's actions were below professional standards. Nor is there convincing evidence he would have rejected the plea and gone to trial. The Petitioner has not demonstrated the fourth factor warrants withdrawing his plea. Further, in regards to immigration consequences, every court that has considered the issue has held that the failure to advise a client of possible deportation as a result of a conviction does not amount to deficient performance by a criminal defense attorney.[8] *See United States v. Fry*, 322 F.3d 1198, 1200 (9th Cir. 2003); *United States v. Gonzalez*, 202 F.3d 20, 25 (1st Cir. 2000); *United States v. Banda*, 1 F.3d 354, 356 (5th Cir. 1993); *Varela v. Kaiser*, 976 F.2d 1357, 1358 (10th Cir. 1992); *United States v. Del Rosario*, 902

---

[8] The result may have been different if the attorney affirmatively told Petitioner that he would not be deported, but that is not the allegation here. *See, e.g., United States v. Kwan*, 407 F.3d 1005, 1015 (9th Cir. 2005); *United States v. Couto*, 311 F.3d 179, 187-88 (2nd Cir. 2002) (holding that an affirmative misrepresentation regarding immigration consequences is deficient under *Strickland*).

F.2d 55, 59 (D.C. Cir. 1990); *Santos v. Kolb*, 880 F.2d 941, 945 (7th Cir. 1989); *United States v. DeFreitas*, 865 F.2d 80, 82 (4th Cir. 1989); *United States v. Yearwood*, 863 F.2d 6, 7-8 (4th Cir. 1988); *United States v. Campbell*, 778 F.2d 764, 769 (11th Cir. 1985); *United States v. Santelises*, 509 F.2d 703, 704 (2d Cir. 1975) (*per curiam*).[9]

Nor should this Court allow Petitioner to withdraw his guilty plea because of a belief that deportation is too harsh a penalty for possession of LSD because such an action would be ineffective. The Sixth Circuit has recently "reaffirmed the well-established principle of law that the vacation of a conviction is ineffective for immigration purposes if it was done so solely to avoid immigration hardship." *Sanusi v. Gonzales*, 474 F.3d 341, 345 (6th Cir. 2007) (citing *Pickering v. Gonzales*, 465 F.3d 263 (6th Cir. 2006)).

The purpose of Rule 11(d) is to allow a "hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir.1991) (internal quotation marks omitted). The facts in this case demonstrate that Petitioner's decision to

---

[9] Petitioner's reliance on *United States v. Castro*, 26 F.3d 557 (5th Cir. 1994), is misplaced. There, the Fifth Circuit remanded a case to have the district court determine whether the petitioner's lawyer was ineffective for not requesting a Judicial Recommendation Against Deportation ("JRAD") from the sentencing judge. *See id.* at 561-63. In the Fifth Circuit opinion, the court took pains to distinguish the claim by Castro – that his lawyer should have sought a JRAD – from claims of many other petitioners, like Haddad – that his lawyer should have advised him about the deportation consequences of his guilty plea. *See id.* at 560 ("[W]e have held that failure to inform a client of the possibility of deportation did not establish ineffective assistance of counsel in violation of the Sixth Amendment . . . . However, Castro is not contending in this appeal that he would have changed his guilty plea if he had known that deportation was collateral consequences of that plea; nor is he arguing in this Court that his counsel's failure to advise him of that consequences violated the Sixth Amendment's guarantee of effective assistance of counsel.").

16

withdraw his guilt plea is a tactical decision designed to undermine the Immigration Court's rulings regarding his deportation. Because Petitioner has failed to justify granting him the "extraordinary remedy" he seeks, it is **RECOMMENDED** that his Petition for Writ of Error Coram Nobis be **DENIED**.

## II. RECOMMENDATION

For the reasons indicated above, **IT IS RECOMMENDED** that Petitioner's Petition for Writ of Error Coram Nobis be **DENIED**. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Date: October 26, 2007                               s/Steven D. Pepe
Ann Arbor, Michigan                                  United States Magistrate Judge

## CERTIFICATE OF SERVICE

      I hereby certify that on <u>October 26, 2007</u>, I electronically filed the foregoing paper with the Clerk Court using the ECF system which will send electronic notification to the following: <u>Michael H. Gordner, Kevin Mulcahy</u>, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: <u>not applicable</u>

                                                 <u>s/ James P. Peltier</u>
                                                 James P. Peltier
                                               Courtroom Deputy Clerk
                                               U.S. District Court
                                               600 Church St.
                                               Flint, MI 48502
                                               810-341-7850
                                               pete_peliter@mied.uscourts.gov