UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. HADDAD,

        Petitioner,

v.

UNITED STATES OF AMERICA,

        Respondent.
_____/

Civil No. 07-12540
Criminal No. 97-80150
Honorable David M. Lawson
Magistrate Judge Steven D. Pepe

## OPINION AND ORDER OVERRULING OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, ADOPTING RECOMMENDATION, AND DENYING PETITION FOR WRIT OF *CORAM NOBIS*

The petitioner, Michael Haddad, a citizen of Syria, pleaded guilty to a misdemeanor controlled substance offence at a ticket appearance before a magistrate judge in 1997. He apparently does not remember much about the proceedings, and there is no transcript available, since the policy in this district is to preserve only for one year the recordings from magistrate judge courtrooms for misdemeanor petty offenses disposed of on appearance tickets not assigned a docket number. The significance of the conviction came home to Haddad when he faced removal proceedings in 2004. In June 2007, nearly ten years after his guilty plea in this Court, Haddad filed the present petition for a writ of *coram nobis*. The Court referred the matter to Magistrate Judge Steven D. Pepe for a report and recommendation. Judge Pepe filed a report recommending that the petition be denied, and the petitioner filed timely objections. The Court has conducted a *de novo* review of the matter and concludes that the petitioner's objections lack merit, and the magistrate judge correctly determined that the petition should be denied. The Court, therefore, will deny the petition for a writ of *coram nobis*.

I.

Haddad is a Syrian citizen who was born in Lebanon. He moved to the United States on May 15, 1991 and was admitted as a resident alien. On December 28, 1996, he was caught by border agents in possession of a small quantity of LSD as he attempted to cross from the United States into Canada. December 1996 apparently was not a good month for him; just eight days earlier, Haddad was convicted in state court for the crime of "financial transaction device/retain without consent," a felony under Michigan law.

Haddad was given an appearance ticket for his controlled substance violation, and on July 9, 1997 he appeared before Magistrate Judge Lynn V. Hooe in this Court. The journal entry states that Haddad pleaded guilty, was fined $1,000, and was ordered to pay a $25 assessment fee. Presently there is no transcript of the proceedings available; it appears that the recording was destroyed in accordance with the records disposition schedule outlined in the *Guide to Judiciary Policies and Procedures*, Vol. 6, Ch. 1, § 140.55.40; Vol. 10, Ch. 6, App'x 6B, at 9, which permits destruction or reuse of magistrate judge tapes after one year for petty offenses not assigned a district court docket number.

Other than the journal entries, the only other rendition of the events of the day comes from Haddad's own affidavit. He avers that he appeared in court on July 9, 1997 without a lawyer, and he thinks he received advice from someone who was a court-appointed attorney. The rest of Haddad's description recounts what he does *not* remember:

> 15. At no time did this lawyer or anyone else discuss with me my constitutional protections or defenses against illegal search or seizure, or any defenses related to actual possession of the drugs, or of the necessity of proving that the alleged drugs were in fact controlled substances, or about the advantages in going to trial and entering a not guilty plea..

> 16. I also have no recollection of ever being informed by counsel of any alternative ways in which the matter could be resolved, any discussion related to sentencing or other alternatives, or any discussion related to the opportunity to receive a form of pre-judgment probation, which I now understand could have ensured that there was no conviction record remaining to operate as a continuing legal disability. Furthermore, I have no recollection of any alternatives to the registration of a conviction and the imposition of a fine ever being raised with the Judge during the proceedings.
>
> 17. There was in fact no discussion with counsel about my citizenship status, nor was there any discussion about the potential consequences that a guilty plea might have on me.
>
> 18. I have no recollection of ever being questioned by the court regarding the voluntariness of the plea, the constitutional rights he would be waiving, the nature of the crime charged, the actual consequences of the guilty plea, or any questions relating to the factual basis of the offense.

Aff. of Michael Haddad ¶ 15-18.

The significance of this conviction apparently did not occur to Haddad until he became the subject of removal proceedings initiated by the Department of Homeland Security on June 10, 2004. The DHS sought removal because: (1) the petitioner had been convicted of a crime involving moral turpitude committed within five years after admission for which a sentence of one year or longer may be imposed (as to the financial transaction device offense), and (2) the petitioner was an alien who had been convicted of a controlled substance offense (as to the LSD offense). Either one of these conviction would have rendered the petitioner eligible for removal. Section 237(a)(2)(A)(I) of the Immigration and Nationality Act.

On June 10, 2004, the petitioner received a Notice to Appear before an immigration judge (IJ) to explain why he should not be removed from the United States due to his state felony conviction and was released on bond. On October 5, 2004, DHS issued an additional charge alleging that the petitioner was subject to removal because of his federal controlled offense. The

petitioner retained counsel to represent him in these proceedings, and a hearing before an IJ was held on October 6, 2004. There, the petitioner admitted to the allegations contained in the Notice to Appear and conceded removability. The petitioner's counsel subsequently requested an extension from the immigration judge to file an application for cancellation of removal.

On February 16, 2005, the IJ ordered the petitioner removed from the United States, noting that the petitioner's application for relief from removal had been abandoned after the petitioner's counsel failed to pursue cancellation of removal. The petitioner then filed a motion to reopen the removal proceedings on the ground that he received ineffective assistance from his former immigration counsel. The IJ denied the petitioner's motion on June 13, 2005, and his decision was affirmed by the Board of Immigration Appeals (BIA), which dismissed the petitioner's appeal on January 24, 2006 on the ground that the petitioner was ineligible for the relief he sought. The United States Court of Appeals for the Sixth Circuit denied the petition for review on April 17, 2007 for lack of jurisdiction. Following the denial of the motion to reopen, the petitioner was ordered to surrender himself to custody, and since May 29, 2007 he has been placed on an "order of supervision" pending the his removal.

Despite commencement of removal proceedings in 2004, the petitioner did not file the present petition for a writ of error *coram nobis* until June 13, 2007, almost ten years after his 1997 conviction. He asks the Court to vacate his controlled substance conviction on the grounds that he "did not knowingly and voluntarily enter his plea," the magistrate judge's plea colloquy was inadequate, his attorney's performance was constitutionally deficient, and the court's loss of his decade-old plea hearing transcript.

Magistrate Judge Pepe filed a report on October 26, 2007 recommending that the petition be denied primarily because it was filed nearly ten years after the conviction became final, but also because it lacked merit. He applied the doctrine of laches, using the conviction date in 1997 as the measuring point, since the defects asserted by the petitioner were the performance of counsel on that date and the alleged omissions from the plea colloquy. The magistrate judge also noted that even if there was merit to the petitioner's argument that the significance of these alleged defects did not emerge until 2004, when the petitioner learned he was subject to removal, the petitioner still waited almost three years to challenge the present conviction, and has offered no "sound reason" for his delay in bringing this claim to the court.

The magistrate judge also reasoned that the absence of a transcript of proceedings should not be charged against the Court or the government because its loss was a consequence of the petitioner's delay. Finally, the magistrate judge suggested that there is no merit to the petitioner's challenge to the conduct of counsel or the Court because there is no obligation, constitutional or otherwise, to affirmatively advise a guilty-pleading defendant of collateral consequences of a conviction, such as immigration implications. Moreover, there is a presumption of regularity to the proceedings, which even the petitioner's own affidavit does not rebut.

The petitioner filed timely objections raising the following arguments: (1) the report's discussion of laches misconstrues the elements of that equitable doctrine and misapprehends the petitioner's factual argument; (2) the report wrongfully finds that the petitioner's evidence of constitutional violations is insufficient in light of the legal presumptions applicable, especially where there was no attempt to question the petitioner at the plea hearing; (3) the report was prepared in the absence of an evidentiary hearing, to which the petitioner is legally entitled if his uncontradicted

affidavit is not accepted; and (4) the report's discussion related to the withdrawal of a plea under Federal Rule of Criminal Procedure 11 is irrelevant in that such application was not advanced.

II.

Objections to a report and recommendation are reviewed *de novo*. 28 U.S.C. § 636(b)(1). The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir.1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

As the magistrate judge thoroughly explained, a writ of error *coram nobis* is an "extraordinary writ, used only to review errors of the most fundamental character — e.g., errors rendering the proceedings themselves invalid." *United States v. Johnson*, 237 F.3d 751, 755 (6th Cir. 2001). A writ of error *coram nobis* provides a remedy to correct fundamental errors only under "circumstances compelling such action to achieve justice" in both civil and criminal cases where a direct appeal is not available. *United States v. Morgan*, 346 U.S. 502, 511 (1954). The writ is available only as a last resort for a petitioner who cannot satisfy the custody requirement for habeas corpus under, for example, 28 U.S.C. § 2241, 2254, or 2255. *See Johnson*, 237 F.3d at 753.

The All Writs Act, 28 U.S.C. § 1651(a), empowers a federal court to issue a writ of error *coram nobis*. *See Morgan*, 346 U.S. at 506. "The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Penn.*

*Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). As noted earlier, it is available only to those defendants who have completed their sentences.

To prevail in a petition for *coram nobis*, the petitioner must show "(1) an error of fact; (2) unknown at the time of trial; (3) of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known." *Johnson*, 237 F.3d at 755. "It is presumed the proceedings were correct and the burden rests on the accused to show otherwise." *Morgan*, 346 U.S. at 512. As noted by the magistrate judge, the Supreme Court has stated that "it is difficult to conceive of a situation in a federal criminal case today where [a writ of *coram nobis*] would be necessary or appropriate." *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (internal quotation marks and citations omitted).

In his objections, the petitioner was critical of the magistrate judge's quotation of this passage from *Carlisle*, arguing that it misstates the holding of the case. In fact, in that case the Supreme Court referred to the writ only to conclude that it had no application to the petitioner there. The Court explained that *coram nobis* did not apply in most criminal cases because the Federal Rules of Criminal Procedure so pervasively controlled the field. The magistrate judge's reference to the quoted language simply emphasized the well-recognized point that the use of this writ in modern criminal procedure is a rarity, and a petitioner seeking such relief has a heavy burden to carry. *Carlisle* remains good law; cases in which *coram nobis* may lie are few, and the burden of establishing a right to relief is formidable.

The magistrate judge reasoned that the petitioner waited too long to apply for the writ, and therefore his request for relief is barred by the doctrine of laches. The petitioner responds that there is no legal or equitable requirement that he apply for relief immediately upon learning of a

constitutional error, and he says the magistrate judge misapplied the doctrine in any event by measuring the delay from the date of conviction in 1997 instead of when the petitioner learned the collateral consequences of his conviction in 2004.

*Coram nobis* is a common law writ, and as such there are no statutory time limits to an application. *Flippins v. United States*, 747 F.2d 1089, 1091 (6th Cir. 1984) (stating that "[t]he writ of error *coram nobis* is available to a convicted criminal at any time following the entry of judgment against him or her"). However, the Sixth Circuit has held that the doctrine of laches applies, *Blanton v. United States*, 94 F.3d 227, 231 (6th Cir. 1996) ("We believe that the doctrine of laches should apply to *coram nobis* proceedings because otherwise there would be essentially no time limits for bringing *coram nobis* claims."), and timeliness is a consideration by itself when deciding whether to issue the writ, *ibid.* ("[T]imeliness should be a consideration in determining whether to grant *coram nobis* petitions.") (citing *Morgan*, 346 U.S. at 512). In *Johnson v. United States*, 334 F.2d 880, 883-84 (6th Cir. 1964), for example, the court, without mentioning the doctrine of laches, refused to grant a writ of error *coram nobis* where the petitioner waited fifteen years before applying for relief. The *Blanton* court held, therefore, that in addition to establishing the other three elements cited above, a petitioner seeking a writ of error *coram nobis* must also demonstrate "that 'sound reasons exist[ed] for failure to seek appropriate earlier relief.'" *Blanton*, 94 F.3d 231 (quoting *Morgan*, 346 U.S. at 512).

Whether one measures the delay from the 1997 conviction or the 2004 removal proceedings, the petitioner's delay in seeking the writ in this case weighs heavily against him. The record plainly demonstrates that the only reason the petitioner is challenging his conviction for a petty offense is the effect that conviction has on his eligibility for domestic residency. That conviction was seven

years old when its impact became fully known, yet the petitioner still waited three more years before seeking relief. He has offered, perhaps, a colorable excuse for the first seven years of delay, but has not advanced a "sound reason" to justify the last three years.

Next, the petitioner has not established that his federal conviction is defective. He argues that his lawyer did not discuss his citizenship or mention the possible consequences a misdemeanor drug conviction might have on his immigration or residency status. Or at least the petitioner has no memory of such a discussion. At the time, neither the court nor defense counsel was expected to render advice on such "collateral" consequences. *See El-Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 1999); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). That has now changed. Just this term, the Supreme Court held in *Padilla v. Kentucky*, --- U.S. ---, ---, 130 S. Ct. 1473, 1486 (2010), "that counsel must inform her client whether his plea carries a risk of deportation."

Nonetheless, to establish a claim of ineffective assistance of counsel under the Sixth Amendment, the petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The *Strickland* framework applies to claims of ineffective assistance of counsel arising from a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

The petitioner faces an uphill battle to demonstrate that his unknown attorney's performance was defective, since he would have to establish that his lawyer's performance was unreasonable "under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting

*Strickland*, 466 U.S. at 688) (internal quotation marks omitted)). It is unlikely that the petitioner could show that an attorney's failure to discuss citizenship, and therefore the immigration consequences of a conviction of a petty offense, would violate the professional norms that prevailed in 1997. Moreover, it is unlikely that *Padilla* will be made retroactive to convictions under collateral attack. *See Simmons v. Kapture*, 516 F.3d 450, 451 (6th Cir. 2008) (stating that under *Teague v. Lane*, 489 U.S. 288 (1988), "a 'new rule' of criminal procedure does not apply retroactively to cases proceeding on collateral . . . review unless the rule either decriminalizes a class of conduct or is a 'watershed' rule that implicates the fundamental fairness and accuracy of a criminal proceeding"). Even if it did apply, the petitioner would still have to demonstrate prejudice, which is equally unlikely because his would be subject to removal even without his controlled substance conviction because of the state felony conviction. Moreover, when an alien seeks to have a conviction vacated via a writ of *coram nobis* "for reasons solely related to rehabilitation or to avoid adverse immigration hardships, rather than on the basis of a procedural or substantive defect in the underlying criminal proceedings, the conviction is not eliminated for immigration purposes." *Pickering v. Gonzales*, 465 F.3d 263, 266 (6th Cir. 2006).

Finally, the petitioner argues that the magistrate judge gave undue weight to the presumption of regularity enjoyed by the customary proceedings of a court. Judge Pepe referenced a passage to that effect in *United States v. Morgan*, 346 U.S. at 512, and the petitioner cites the following language from that case in response: "In this state of the record [without a transcript of proceedings] we cannot know the facts and thus we must rely on respondent's allegations." *Ibid.* The petitioner argues that his affidavit must be accepted and an evidentiary hearing conducted. *Morgan* does not support that argument. In *Morgan*, the Court held that a federal district court could entertain a

collateral challenge that the petitioner's conviction was obtained without counsel and without a proper waiver via a writ of *coram nobis*. The full text of the Court's statement, however, undermines the petitioner's position here. The Court stated:

> Where it cannot be deduced from the record whether counsel was properly waived, we think, no other remedy being then available and sound reasons existing for failure to seek appropriate earlier relief, this motion in the nature of the extraordinary writ of *coram nobis* must be heard by the federal trial court. Otherwise a wrong may stand uncorrected which the available remedy would right. *Of course, the absence of a showing of waiver from the record does not of itself invalidate the judgment. It is presumed the proceedings were correct and the burden rests on the accused to show otherwise.*

*Id.* at 512 (emphasis added; footnote omitted).

The petitioner's best showing on this score is his affidavit in which he states that he has "no recollection of ever being questioned by the court regarding the voluntariness of the plea, the constitutional rights [I] would be waiving, the nature of the crime charged, the actual consequences of the guilty plea, or any questions relating to the factual basis of the offense." Aff. of Michael Haddad ¶ 18. That statement does not sustain his burden or overcome the presumption that Magistrate Judge Hooe properly discharged his duties. The petitioner's affidavit certainly does not establish the "fundamentally unjust character" of the proceedings. *Johnson*, 237 F.3d at 755.

III.

The Court agrees with the magistrate judge that the petitioner has not shown an error of fact that was unknown at the time of the guilty plea of a fundamentally unjust character which probably would have altered the outcome of the plea proceeding if it had been known, and that sound reasons existed for the petitioner's failure to seek appropriate earlier relief.

Accordingly, it is **ORDERED** that the petitioner's objections to the magistrate judge's report and recommendation [dkt #11] are **OVERRULED**.

It is further **ORDERED** that the report and recommendation [dkt #8] is **ADOPTED**.

It is further **ORDERED** that the petition for writ of error *coram nobis* [dkt #1] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 20, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 20, 2010.

s/Teresa Scott-Feijoo
TERESA SCOTT-FEIJOO